IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| BRIAN SANDRIDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-CV-6029-SJ-DGK |
| | ) | |
| CENTURION MEDICAL PRODUCTS | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**

Plaintiff Brian Sandridge ("Sandridge") brought this age-discrimination lawsuit against Defendant Centurion Medical Products Corporation ("Centurion"), which interviewed him for a job but decided not to hire him. Sandridge alleges that Defendant Medical Recruiters ("Medical Recruiters") assisted Centurion in its hiring decisions.

Defendants removed this case from Missouri state court. Pending before the Court is Sandridge's Motion to Remand (Doc. 7), which argues that the Court lacks subject-matter jurisdiction because the case is not worth over $75,000, the jurisdictional minimum. Finding that the value of reinstating Sandridge to his position exceeds $75,000, the Court DENIES the motion.

**Background**

Sandridge applied for a sales manager position with Centurion. Centurion cancelled his final interview, thereby declining to hire him. A Medical Recruiters representative told Sandridge, "[T]he Centurion Vice President wanted someone younger in the position." Compl. at ¶ 13 (Doc. 1-1 at 3). According to a Centurion vice president, the sales manager position

would have paid between approximately $50,000 and $80,000 per year, plus commissions and benefits.

Sandridge filed this lawsuit in the Circuit Court of Platte County, Missouri, alleging that Centurion decided not to hire him based on his age, in violation of the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. §§ 213.010–.137. He alleges that Medical Recruiters aided and abetted this discrimination. *See* Mo. Rev. Stat. § 213.070(1). Sandridge is a citizen of Missouri; Centurion and Medical Recruiters are each citizens of Michigan. The complaint seeks actual damages, punitive damages, attorneys' fees, costs, and equitable relief, including reinstatement or front pay, "in an aggregate amount not to exceed $75,000" (Doc. 1-1 at 4).

**Standard**

Defendants removed to this Court on the basis of diversity jurisdiction. Under that theory, a court has jurisdiction over a civil action where the adverse parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. §§ 1332(a), 1441(a). If the court determines that it has no jurisdiction over a removed case, then it must remand. *Id.* § 1447(c). Here, complete diversity of citizenship exists. The appropriateness of dismissal in this case turns on whether the amount-in-controversy requirement is satisfied.

The remand statute addresses how to value the amount in controversy when contested by both sides, and states as follows:

> **(c)(2)** If removal of a civil action is sought on the basis of [diversity jurisdiction], the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—
>> **(A)** the notice of removal may assert the amount in controversy if the initial pleading seeks—
>>> **(i)** nonmonetary relief; or

>    **(ii)** a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and
>
>    **(B)** removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [$75,000].

28 U.S.C. § 1446.[1] Even after the defendants satisfy their burden under § 1446(c)(2)(B), a court may remand if the plaintiff demonstrates that it is legally impossible for him to recover over $75,000. *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 790 (8th Cir. 2012).

## Discussion

Sandridge argues that remand is required because the jurisdictional minimum is not met. He relies on his petition's ad damnum clause, which seeks damages, fees, and costs "in an aggregate amount not to exceed $75,000" (Doc. 1-1 at 4). This prayer, he argues, is a firm cap on damages. Defendants respond that Sandridge's ad damnum cannot restrict the amount of recoverable damages, and the value of his reinstatement, commissions, benefits, punitive damages, and attorneys' fees far exceeds $75,000.

The first issue is whether the Court must even consider the amount of controversy alleged in Defendants' notice of removal. Defendants argue that their suggested amount qualifies for consideration under § 1446(c)(2)(A)(ii), because Sandridge's complaint sought a sum certain in contravention of Missouri state law. (Doc. 11 at 7–8 (citing Mo. R. Civ. P. 55.05)). Sandridge does not respond to this argument. The Court will therefore assume, without deciding, that Defendants are correct that Missouri state practice does not permit a demand for a specific sum on an MHRA claim. Their notice of removal may thus assert the amount in controversy. *See* 28 U.S.C. § 1446(c)(2)(A).

---

[1] This section, added in 2011, abrogates antecedent case law in conflict. *Cf., e.g.*, *Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017, 1018 (8th Cir. 2010) ("[I]f a plaintiff's complaint asks 'for less than the jurisdictional amount, only the sum demanded is in controversy,' and so a federal court has no jurisdiction over the action." (quoting 14AA Charles A. Wright et al., *Federal Practice and Procedure* § 3702 (3d ed. Supp. 2009))).

The next issue is whether, by the preponderance of the evidence submitted by both sides, "a fact finder *might* legally conclude" that the amount in controversy exceeds $75,000. *Hargis*, 674 F.3d at 789 (internal quotation marks omitted); *see Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). On his MHRA claim, Sandridge seeks injunctive remedies, including reinstatement. *See* Mo. Rev. Stat. § 213.111.2; *Gilliland v. Mo. Athletic Club*, 273 S.W.3d 516, 520 n.3 (Mo. 2009). "In actions seeking . . . injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977). Therefore, the amount in controversy is at least the value of Sandridge's reinstatement: the money he would earn if Defendants installed him in the sales manager position. *See id.*; *Goss v. San Jacinto Junior Coll.*, 588 F.2d 96, 97–98 (5th Cir. 1979) (holding that because the plaintiff sought reinstatement to a position with an annual salary in excess of the jurisdictional minimum, there was a legal possibility that she could recover over the jurisdictional minimum).

The complaint does not specify the length of time for which he seeks to be reinstated as a sales manager at Centurion. Centurion's vice president states that the starting base salary for the sales manager position in Kansas City could be as high as approximately $80,000 per year. If the Court ultimately awards Sandridge at least the value of one year's reinstatement, the amount in controversy could exceed the $75,000 threshold. On this conservative estimate, the Court finds that Sandridge's claim could be worth over $75,000. *See Goss*, 588 F.2d at 97–98; *see also Salazar v. Tyson Foods, Inc.*, 985 F. Supp. 2d 996, 1002 (S.D. Iowa 2013) (on a complaint that

4
Case 5:15-cv-06029-DGK   Document 26   Filed 06/09/15   Page 4 of 6

requested an "indefinite period of reinstatement," valuing reinstatement as the salary the employee stood to earn annually upon return to the position).[2]

Finally, the Court must determine whether Sandridge has shown he is nonetheless legally barred from recovering over $75,000.  *See Hargis*, 674 F.3d at 790 ("'Once the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount.'").  Sandridge argues—without citation to any legal authority—that because "[a]rtful pleading is perfectly fine" (Doc. 8 at 5), his capped prayer by itself "is sufficient to mandate remand in this case" (Doc. 15 at 1).

A self-imposed limitation on recovery defeats federal jurisdiction only if it takes the form of a binding stipulation.  *Hargis*, 674 F.3d at 789.  Such a stipulation must be "binding," "conclusive," and "not subject to subsequent variation."  *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013) (internal quotation marks omitted).  Sandridge's complaint *seeks* $75,000 or less, but does not irrevocably *promise* to accept only $75,000 or less.  It is therefore not a binding stipulation, *see id.*, and so does not establish to a "legal certainty" that his claims fall below the jurisdictional minimum.  *See Hargis*, 674 F.3d at 789.[3]

Because Defendants have established by the preponderance of the evidence that the amount in controversy exceeds $75,000, and Sandridge has not shown to a legal certainty that over $75,000 is unrecoverable, the Court holds that it has jurisdiction over this case.  *See* 28

---

[2] The Court thus does not need to consider the value of the statutory punitive damages or attorneys' fees Sandridge seeks, both of which could qualify toward the amount in controversy.  *See Crawford v. Hoffman-La Roche, Ltd.*, 267 F.3d 760, 766 (8th Cir. 2001); *Capitol Indem. Corp. v. Miles*, 978 F.2d 437, 438 (8th Cir. 1992).

[3] In his reply brief, Sandridge states that he has "agree[d] to limit his recovery to this jurisdictional amount" (Doc. 15 at 2).  A damages stipulation is ineffective unless filed *before* removal.  *Hargis*, 674 F.3d at 789.  Insofar as the Court could fairly construe Sandridge's statement in his brief as a binding stipulation, it comes too late to compel remand.

U.S.C. § 1446(c)(2); *Hargis*, 674 F.3d at 790. Therefore, the Court must deny his motion to remand. *See* 28 U.S.C. § 1447(c).

## Conclusion

In view of the foregoing, Sandridge's Motion to Remand (Doc. 7) is DENIED.

**IT IS SO ORDERED.**

Date:  June 9, 2015              /s/ Greg Kays
                                 GREG KAYS, CHIEF JUDGE
                                 UNITED STATES DISTRICT COURT